**BURGER DRILLING COMPANY, INC.,**
**Plaintiff-Appellee,**

v.

**Ralph BAUMAN, Individually and d/b/a**
**Bauman Oil and Gas Properties,**
**Defendant-Appellant.**

No. 79–3928.

United States Court of Appeals,
Fifth Circuit.
Unit A.

April 20, 1981.

Rehearing Denied May 18, 1981.

James W. Heyer, Denver, Colo., Nelson Quinn, Abilene, Tex., for defendant-appellant.

Stubbeman, McRae, Sealy, Laughlin & Browder, Michael B. McKinney, Midland, Tex., for plaintiff-appellee.

Before AINSWORTH and SAM D. JOHNSON, Circuit Judges, and HUNTER,* District Judge.

HUNTER, District Judge:

This appeal challenges the district court's judgment in favor of plaintiff and against defendant in the amount of $122,861.00, which was entered on the basis of answers by the jury to special questions submitted to the jury under the special verdict procedure prescribed by Rule 49(a) of the Federal Rules of Civil Procedure. We affirm.

An abridged version of the facts will suffice for a consideration of the arguments. Burger Drilling brought this suit against Bauman Oil, alleging that Bauman owed it additional compensation for performance of services pursuant to a drilling contract between the parties. The contract provided that Burger would drill an oil and gas well for Bauman on a lease owned and operated by Bauman. Burger was obligated to perform the work diligently, in a good and workmanlike manner. Underlying Bauman's argument is that the operations as a general proposition were to be conducted at contractor's risk. However, there were exceptions where a "loss of circulation" developed. These exceptions are found in Paragraphs 11 and 12 of the contract:

> 11. That in the event circulation of drilling fluid or mud is lost, the Contractor shall attempt to regain circulation,

---

* District Judge of the Western District of Louisiana sitting by designation.

provided, however, that Owner shall pay to Contractor regular day work as provided for all time spent by Contractor.

12. That while day work is being performed by Contractor under the direction, supervision or control of Owner or his representatives, such work shall be at the risk of Owner, and Owner shall pay Contractor the day work rates herein specified for the time spent on a fishing job or for recovery of drill pipe that has become stuck in the performance of such day work, provided that Owner, at his option, may order Contractor to cease such fishing operations or such efforts to recover stuck drill pipe by reimbursing Contractor for the cost of all drill pipe and other equipment owned by Contractor then in the hole and not recovered and Contractor shall immediately proceed to whipstock the hole or plug and abandon said hole, as ordered by Owner for which work the Owner shall pay Contractor the day work rates specified.

Burger commenced drilling on the 31st day of December, 1977, and by January 8, 1978, had reached a depth of 4,757 feet. No problems had been encountered and Bauman instructed Burger to drill a rathole of an additional 100 feet. He was in the process of doing so when he lost circulation on the well.[1] Burger's employees proceeded to manipulate the pipe in an endeavor to pull the drill bit from the bottom. The pipe broke. Third parties were employed to pull the remainder of the pipe out of the hole (fishing operation). By statement dated February 15, 1978, Burger charged Bauman the normal drilling rates, and in addition charged him for day rates and third party expenses incurred while the fishing operation was being conducted. Bauman disputed this bill, and paid only the part that related to the normal footage charge, refusing to pay the day rate due to fishing and the third party expenses incurred in the fishing operation.[2] This suit was instituted to recover these additional expenses.

Bauman discusses at length the conflicting evidence on the issues presented, but cannot plausibly dispute that there was sufficient evidence to sustain the jury findings. These findings may be summarized:

(1) Burger performed its services diligently, in a good and workmanlike manner.

(2) Burger lost circulation while drilling on January 8, 1978.

(3) Burger did not regain circulation before the drill pipe in the well became stuck on January 8, 1978.

(4) Burger did not fail to exercise ordinary care to operate its drilling equipment in such a manner as to avoid getting its drill pipe stuck on January 8, 1978.

(5) Burger was not operating with a defective weight indicator at the time the drill pipe separated.

(9) Burger did not use more force than was reasonably necessary in the exercise of ordinary care at the time and under the circumstances then existing while it was trying to free its drilling equipment.

(11) Burger was using defective drill pipe in the drilling of the Cross No. 1 Well at the time the pipe got stuck.

(12) Burger did not know, or in the exercise of ordinary care should not have

---

1. "Lost circulation" is a very serious but not altogether uncommon event which usually occurs when in the drilling process a cavern or some extremely porous formation is encountered into which the drilling mud escapes without returning to the surface. Drilling mud is initially pumped under high pressure down inside the drill pipe and through holes in the rotating bit. Full circulation is essential to the rotary drilling process. The mud lubricates and cools the bit. It returns in suspension to the surface the cuttings which geologists study for the presence of hydrocarbons and which, if left in the hole, would clog the bit and stick the pipe; and, on its return journey, the mud cakes the well bore, sealing harmful formations while protecting valuable ones, and it creates support for the walls of the hole. In the case of lost circulation, cuttings and cave-ins will fall on top of the drill collars and bit, causing the pipe to get stuck in the hole.

2. "Fishing operations" are an attempt to remove all of the pieces of pipe and equipment in the drilling hole when the string of drill pipe breaks into two or more lengths at a then unknown depth somewhere down the hole.

known, that it was using defective drill pipe in the drilling of the Cross No. 1 Well.

A 13th interrogatory was submitted, which read:

Do you find from a preponderance of the evidence that the use of such defective pipe, as you may have found in answer to the two preceding questions, was a proximate cause of the separation of the drill pipe and the fishing operations on the occasion in question?

The jury did not respond to the 13th interrogatory because it was instructed to do so *only* if the response to Interrogatory No. 12 was in the affirmative.

The jury returned its verdict on January 24, 1979. Defendant filed post-verdict motions. Due to illness, Judge Brewster was unable to hear arguments until November 1, 1979, at which time all post-verdict motions were denied, and judgment was entered. The essence of appellant's argument centers on the jury's answer to Interrogatory No. 11. On that issue the jury determined that Burger was using defective drill pipe. However, in the following question the jury was asked:

"*Question No. 12:*"

"Do you find from a preponderance of the evidence that Burger Drilling Company, Inc. knew, or in the exercise of ordinary care should have known, that it was using defective drill pipe, if you have found that it was defective, in the drilling of the Cross No. 1 Well on the occasion inquired about in Question No. 11?"

It responded:

"We do not so find."

**3.** The jury found that circulation was lost on January 8, 1978. The jury's additional finding that circulation was not regained before the drill pipe became stuck establishes that Burger was operating on the "day work" basis when the expenses (at issue) were incurred.

**4.** Rule 49. Special Verdicts and Interrogatories.

(a) SPECIAL VERDICTS. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may

Bauman insists that the finding of defective drill pipe entitles him to a judgment as a matter of law under the contract, or in the alternative that the district court was required to make a finding of proximate cause and then enter judgment in his favor. Bauman's argument that a finding of defective pipe entitled him to a judgment as a matter of law is premised upon assumptions that the additional costs were "unforeseen" and that Burger assumed all risk of loss under the contract. We read the plain language of the contract quite differently. The parties foresaw the possibility of losing circulation and incorporated specific provisions into the contract regarding this precise situation. In its verdict, the jury determined that Burger performed its services diligently and in a good and workmanlike manner. Bauman cannot successfully contend that Burger "assumed all risk of loss under the contract...," when there are straightforward and unambiguous contractual provisions providing that in the event circulation was lost, the owner (Bauman) was to pay to the contractor (Burger) the day work rate specified.[3]

Alternatively, defendant insists that the defective pipe was the proximate cause of the separation of the drill pipe, and that Judge Brewster should have entered judgment to that effect, notwithstanding the jury's failure to reach the issue.

Rule 49(a) of the Federal Rules of Civil Procedure provides that if the court omits any issue of fact raised by the pleadings or by the evidence, the parties waive the right to a trial by jury on that issue, and if the court does not make the finding, it is deemed to have made a finding in accordance with the judgment.[4] When the jury

submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by

verdict and subsequent entry of judgment were discussed, the transcript reveals the following dialogue between Judge Brewster and defense counsel:

> THE COURT: This case was evidently tried on a theory different from what you are arguing today because we asked the jury question number 12, whether or not "Burger Drilling Company, Inc., knew, or in the exercise of ordinary care should have known, that it was using defective drilling pipe, if it was found that it was defective, in the drilling of the well on the occasion inquired about."

Then, the next question is conditional upon an affirmative finding to that issue. The conditional summation was, "You will answer question number 13 only in the event your answer to question number 12 is, 'We do so find.'"

Then, question number 13, of course, that was not answered because their answer was, "We do not so find."

\* \* \* \* \* \*

Now, the way that was submitted, no answer was required.

MR. HEYER: Well, we didn't do it right.

THE COURT: Well, you didn't have any objection to it at the time.

MR. HEYER: No, I don't have any objections as far as we went. What we should have done is ask them one more question. We should have separated the negligence aspect and ___

THE COURT: Well, I am beginning to think you presented the thing to me on a different theory from what you are arguing now.

MR. HEYER: The theory hasn't changed at all. The theory ___

\* \* \* \* \* \*

THE COURT: Well, wait a minute. There is no finding anywhere in the verdict to the effect that the use of defective drill pipe, such as the jury may have found, was a proximate cause of the separation of the drill pipe and the fishing operation on the occasion in question. There is no finding to that effect anywhere.

MR. HEYER: No, but they found it was defective. In answer to that number, 11, we should have said ___

If they found that defective drill pipe was used, our next question should have been, you know, if you answered "yes" to the foregoing question, do you find that was the cause of separation. But we didn't.

THE COURT: Did you request an issue along that line?

MR. HEYER: I don't think we did, your Honor.

\* \* \* \* \* \*

THE COURT: I submitted it because you requested it in this form.

MR. HEYER: That is correct. I am saying to you, we did not submit everything to the jury. Now, maybe it is our fault we didn't, but what do we do with what they did find? And what do we do with what they didn't find? I am not saying that your Honor deprived us of anything. What we asked for, you gave us as far as these issues. What I am saying is, we left something unasked.

THE COURT: Yes, sir.

MR. HEYER: ___ which now creates a gap that your Honor has to fill in. What do we do with the fact ___ See, we tied this proximate cause question, or the separation, into a negligence aspect there. We combined it.

THE COURT: The only theory then was negligence was a necessary finding. You argued it and the jury found that way.

\* \* \* \* \* \*

MR. HEYER: \* \* \* Now, we omitted to ask them the causation factor there, but on the evidence, your Honor, you now should supply that omission, fill in that gap.

\* \* \* \* \* \*

the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

THE COURT: Well, my answer would be consistent with the judgment that I entered.

\* \* \* \* \* \*

MR. HEYER: There is no judgment in this case yet. And to be consistent, you have to regard the most important factor to be the answer that the jury found affirmatively, that the pipe was defective. That is what you must be consistent with. That finding.

THE COURT: All right. I enter judgment for the plaintiff on the verdict of the jury for the amount sued for.

The preceding colloquy reveals that the issues were submitted to the jury as requested by defense counsel. It reflects, too, the district judge's awareness that when he signed the judgment he was making a finding on the proximate cause issue in accord with that judgment. We cannot say that such a finding was not supported by the evidence which was in sharp conflict.[5]

The judgment of the district court was correct.

AFFIRMED.

---

5. It is the position of Burger that the pipe separated because of the loss of circulation, which causes the walls of the hole to cave in around the drill collars and drill bit, making it difficult to extract the same without causing the pipe to part and separate.